UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH PITTMAN, JR., DIANA PITTMAN,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br><br>　　　　　Defendant. | Civil No. 09-CV-1952-WQH(WVG)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION (DOC. 26) OF ORDER TO PRODUCE PORTIONS OF INTERNAL FILES (DOC. 23) |

Pending before the Court is defendant, County of San Diego's ("County"), motion for reconsideration (Doc. No. 26) of the Court's order compelling production of documents (Doc. No. 23). Specifically, the County objects to the Court's determination that documents bearing Bates numbers Sheriff 0001832-0001845 and Sheriff 0001851-0001870 are not protected by the attorney-client privilege or work-product doctrine. After considering new facts the County presented for the first time here, the Court GRANTS the motion.

## I.  FACTUAL SUMMARY

County Counsel is charged with representing the County and its various subdivisions and departments in all legal affairs.

1  County Counsel's role includes primary responsibility for investi-
2  gating administrative claims for damages against the County.
3       Plaintiffs in this case tendered a claim that arose from
4  their confrontation with San Diego Sheriff Deputies on the evening
5  of October 19, 2008.  County Counsel received and handled the
6  evaluation and disposition of the claim.
7       On February 20, 2009, a non-attorney, Mary Ann Wiggs of the
8  County Counsel's Claims Division, sent the Sheriff's Department a
9  request for the Sheriff's "comments" on the claim.  (Bates Nos.
10 Sheriff 001844-45.)  The letter advised the Sheriff to mark his
11 response as "Attorney Client Communication" and advised that
12 "[a]ny investigative efforts you now take and your analysis of the
13 facts are in anticipation of litigation."  (Id.)
14      On February 25, 2009, Lieutenant Margaret Sanfilippo of the
15 Sheriff's Division of Inspectional Services forwarded the request
16 to the Commander and Captain in charge of the Sheriff's Lemon
17 Grove substation for their "recommendation regarding settlement."
18 (Bates No. Sheriff 001843.)
19      On March 19, 2009, the Sergeant assigned to review the
20 matter and make a recommendation completed and submitted a highly
21 detailed report that included the Sergeant's evaluation of the
22 underlying incident and recommendation regarding the outcome of
23 the plaintiffs' claim.  (Bates Nos. Sheriff 001840-42, Sheriff
24 001851-71.)
25      On March 24, 2009, Lieutenant Sanfilippo wrote Ms. Wiggs
26 and made a recommendation regarding the Pittmans' claim.  (Bates
27 No. Sheriff 001835.)
28

On March 30, 2009, Ms. Wiggs sent an e-mail requesting Joseph Pittman's full medical records on a compact disc. (Bates No. Sheriff 001833.)

On April 1, 2009, Lieutenant Sanfilippo forwarded Ms. Wiggs's request to the Sheriff's Medical Services Division. (Bates No. Sheriff 001832.)

On April 14, 2009, a Sheriff's Detentions Supervising Nurse prepared a very superficial report of Mr. Pittman's medical treatment in jail. (Bates Nos. Sheriff 001836-39.)

On April 15, 2009, the Division of Inspectional Services forwarded the medical report to Ms. Wiggs. (Bates No. Sheriff 001834.)

The lead or title document in each submission was marked either "Confidential," "Attorney Client Confidential," or "Attorney Client Communication."

## II.  LEGAL STANDARD

**A.  Motions For Reconsideration**

The Court has discretion to reconsider interlocutory orders at any time prior to final judgment. Hydranautics v. Filmtec Corp., 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003); Washington v. Garcia, 977 F. Supp. 1067, 1069 (S.D. Cal. 1997); Cal. v. Summer Del Caribe, Inc., 821 F. Supp. 574, 577 (N.D. Cal. 1993) (citations omitted). "Such motions may be justified on the basis of an intervening change in the law, or the need to correct a clear error or prevent manifest injustice." Cal., 821 F. Supp. at 577 (citing Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989)). "To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convinc-

3                                                                  09cv1952

ing nature to induce the court to reverse its prior decision." Id. (citations omitted).

As the Fifth Circuit explained, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." McKethan v. Tex. Farm Bureau, 996 F.2d 734, 738 n.6 (5th Cir. 1993) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)). Ultimately, the decision on a motion for reconsideration lies in the Court's sound discretion. Navajo Nation v. Norris, 331 F.3d 1041, 1046 (9th Cir.2003) (citing Kona Enters. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000)).

**B.      Work-Product Doctrine**

The so-called work-product doctrine, as embodied in Federal Rule of Civil Procedure 26(b)(3), broadly applies to documents prepared by the "parties' attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A).

In order to qualify for work-product protection, the asserting party must show that the withheld materials are: (1) documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) the documents or tangible things were prepared by or for the party or the attorney asserting the privilege. See id.; In re Cal. Pub. Util. Comm'n, 892 F.2d 778, 780-81 (9th Cir. 1989).

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities

of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." United States v. Nobles, 422 U.S. 225, 238-39 (1975); see also In re Grand Jury Subpoena, 350 F.3d 1010, 1015 (9th Cir. 2003).

Nevertheless, the protection afforded by the doctrine is qualified and may be overcome if the party seeking disclosure shows that the materials are otherwise discoverable under Rule 26(b)(1) and that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

### C. Attorney-Client Privilege

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also giving of information to the lawyer to enable him to give sound and informed advice." Upjohn v. United States, 449 U.S. 383, 390 (1981). Courts have found that investigation is important part of an attorney's legal services to a client. United States v. Rowe, 96 F.3d 1294, 1296-97 (9th Cir. 1996).

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (quoting United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)).

An eight-part test determines whether information is covered by the attorney-client privilege:

> 1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

Id. (quoting In re Grand Jury Investigation, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

## II.  DISCUSSION

### A.  The Court Accepts The New Facts Presented For the First Time in the Reconsideration Motion

Although the County presented facts in support of its privilege and work-product doctrine claims for the first time in its motion for reconsideration, the Court exercises its discretion to consider those facts in the interest of judicial economy and in light of the importance of the issues.

### B.  Work-Product Doctrine

All of the documents under reconsideration in some way relate to Plaintiffs' pre-litigation claim tender and County Counsel's request for the Sheriff's evaluation and input. However, the Court evaluates only the ultimate products of County Counsel's requests, the Sergeant's report (Bates Nos. Sheriff 001840-42, Sheriff 001851-71) and Medical Services Division report (Bates Nos. Sheriff 001836-39), under the work-product doctrine. The remaining document pages (Bates Nos. Sheriff 001832-35, 001843-45) are more aptly categorized as "communications" and will be evaluated under the attorney-client privilege doctrine.

/ / /

### 1. The Reports Were Created Under Counsel's Direction

Based on the County's explanation of the chain of communications that led to the reports' creation, it is clear that both reports were prepared at the request and direction of the County's attorney. The Court next turns to whether the reports above were prepared "in anticipation of litigation."

### 2. The Reports Were Made In Anticipation of Litigation

Because the reports at issue were prepared before litigation and during the claim tender phase, the Court must decide whether reports prepared to accept or deny a claim are prepared "in anticipation of litigation." Based on the facts of this case, the Court finds that the reports were so generated.

Central to the work-product doctrine is the requirement that the documents under its umbrella be "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). Under Ninth Circuit law, a document meets this requirement if it was prepared "<u>because of the prospect</u> of litigation." In re Grand Jury Subpoena, 357 F.3d 900, 908 (9th Cir. 2003) (emphasis added). A document satisfies Rule 26(b)(3) under this standard if, under the totality of circumstances, "it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" Id. at 908 (quoting United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998)). While it is true that not every claim against the County will result in a lawsuit, "the fact that [a party] conducts an investigation into claims against [it] . . . as a matter of routine does not necessarily mean that the investigation is not being conducted in anticipation of litigation, if

other factors are present." Garcia v. City of Imperial, ___ F.R.D. ___, 2010 WL 306289 at *4 (S.D. Cal. Aug. 2, 2010) (citing Spaulding v. Denton, 68 F.R.D. 342, 345 (D. Del. 1975); 6 Moore's Federal Practice - Civil at ¶ 26.70[3][a] (Matthew Bender 3d ed.).

On February 9, 2009, the Pittmans' attorney submitted a claim notice to the County in the form of a letter. (Motion, Exhibit A.) The Pittmans' notice included their detailed version of events and concluded as follows: "The amount of this claim for each of the Claimants individually exceeds ten thousand dollars ($10,000) and *when* it is filed in court it will be filed as an unlimited case seeking in excess of $1,000,000." (Exhibit A at 5 (emphasis added). The Court finds notable the letter's use of "when," which essentially put the County on notice that the Pittmans would file a lawsuit if their claim was denied, instead of "if," which would have made the prospects of future litigation much less certain. Thus, at the time County Counsel sought the Sheriff's investigation and evaluation of the allegations and claim, the County reasonably anticipated that the Pittmans would file a lawsuit seeking more than $1,000,000 if their claim was denied--the Pittmans warned the County as much from the beginning.

In light of the Pittmans' letter, County Counsel's request to the Sheriff served a dual purpose. It simultaneously sought the Sheriff's opinion on the active claim and requested that the Sheriff "help the County Counsel assess the County's civil liability." (Motion at 11:1.) It is not relevant that an active lawsuit was not pending when the reports were made, as it is sufficient that litigation was reasonably anticipated under the totality of the circumstances. In re Grand Jury Subpoena, 357

F.3d 900, 908 (9th Cir. 2003). The Court finds that the reports were created in anticipation of litigation.

The Court further finds that the reports would not have been created in substantially similar form but for the prospect of litigation. The Pittmans assert that the reports were created during the ordinary course of business. However, Lieutenant Sanfilippo declares that the Department of Inspectional Services "would not initiate such an internal review and investigation without a request from County Counsel." (Sanfilippo Decl. at ¶ 6.) In other words, claim and litigation reviews and recommendations are not part of the Sheriff's daily operations, as County Counsel, not the Sheriff, has primary responsibility for handling claims and litigation. Cf. Miller v. Pancucci, 141 F.R.D. 292, 303 (C.D. Cal. 1992) (finding that a report was created during the course of a police department's business because the internal affairs unit had been established partly with the purpose of investigating tort claims).

The same is true for the Medical Services Division's report, which bears the claim number and is essentially a bare-bones summary of Mr. Pittman's routine, post-booking medical processing, and which was derived from documents created at the time of his processing. The Medical Services Division has no other reason to create such reports during the course of its daily business.

### 3. The Reports Were Created By County Counsel's Agents

Further, it is not relevant that the reports were not prepared *by* County Counsel, but were prepared *for* County Counsel. The Sheriff Sergeant and Supervising Nurse were both employees and

agents of the Sheriff's Department, a division of the County, and were employees and agents of the County as a result. As such, the reports were prepared by the County's employees and are eligible for the doctrine's protection. See Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things . . . by or for another party or <u>its representative</u> (including the other party's attorney, consultant, . . . <u>or agent</u>).") (emphasis added); <u>Canel v. Lincoln Nat'l Bank</u>, 179 F.R.D. 224, 227 (N.D. Ill. 1998) (memorandum prepared by bank officer analyzing legal, factual, and financial issues raised by minority shareholder suit was entitled to work product protection).

The Court recognizes that it previously found that these reports were not protected based on its then assessment that they were prepared in the course of the Sheriff's operations. However, the Court was not previously privy to the sequence of communications and requests that led to their creation. When viewed alone and without context, it is <u>not</u> self-evident that these documents were created at County Counsel's request and outside the course of the Sheriff's daily operations. Without proper context, these reports originally appeared to be prepared within, and <u>for</u>, the Sheriff's Department, as County Counsel's name does not appear on any of them. However, with the benefit of additional information and the proper context, it is evident that these reports were generated during the course of legal representation and are attorney work product.

    **4.**    <u>**Plaintiffs Make No Showing Of Undue Hardship**</u>

While it is true that work-product doctrine is not absolute, the plaintiffs have made no showing whatsoever of undue

hardship or substantial need, as their pleadings simply do not address the issue.  See Fed. R. Civ. P. 26(b)(3)(A)(ii); Admiral Ins. Co. v. United States District Court, 881 F.2d 1486, 1494 (9th Cir. 1989) ("The primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'").  All of the information in the reports is equally available to the Pittmans, whether from the original arrest reports, medical reports, or through witness depositions.  The reports contain no facts that are unique to them and which cannot be obtained during the ordinary course of litigation and discovery.

The reports here are distinguishable from arrest reports and medical records that are ordinarily prepared at or near the time of an incident.  In general, the work-product doctrine does not protect contemporaneously-prepared police reports or reports that document the patient's then-existing ailments, diagnosis, and treatment, as they were prepared at the time of injury when the prospect of litigation was completely unknown.  However, when these reports are prepared months after the underlying incident, after a claim has been filed, and after counsel has requested them, they serve a different purpose.  They no longer document facts for the sake of documentation but rather review, evaluate, and summarize facts and source reports with the ultimate purpose of helping develop legal strategy.

**B.     Attorney-Client Privilege**

Based on the reasons below, the Court next finds that documents bearing Bates numbers Sheriff 001832-35 and Sheriff

001843-45 satisfy the attorney-client privilege's elements and are absolutely protected from disclosure.

First, the communications were made during the course of County Counsel's request for the client's input on how a claim should be handled. This qualifies as "legal advice of any kind."

Next, the County Counsel was acting as the County's legal advisor and the communications were made in County Counsel's capacity as such; the Sheriff is part of the County. And although Ms. Wiggs was not herself an attorney, she was acting in her capacity as a County Counsel employee. See United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961).

Next, the communications were made in confidence. Each communication is marked as confidential and there was full expectation that the communications would be kept confidential.

Next, the client, the County, is now insisting that the documents be kept confidential and from being disclosed.

Finally, there is no indication that the attorney-client privilege was waived by disclosure to third parties or in any other way.

## V. CONCLUSION

Based on the foregoing, the Court GRANTS the County's motion for reconsideration and finds as follows:

(1) The document pages numbered Sheriff 001840-42, Sheriff 001851-71, and 001836-39 are protected from disclosure by the attorney work-product doctrine;[1/] and

---

[1/] The Court is careful to note that while the work-product doctrine prevents the production of the reports themselves, the facts and witness identities within the reports are not protected if they are independently responsive to discovery requests and are themselves not independently privileged from disclosure.

```
1          (2) The document pages bearing Bates numbers Sheriff
2    001832-35 and Sheriff 001843-45 are absolutely protected from
3    disclosure by the attorney-client privilege.
4    IT IS SO ORDERED.
5    DATED:   November 3, 2010
```

_____
Hon. William V. Gallo
U.S. Magistrate Judge